HENDERSON, J., did not sit.

---

## Com. ex rel. v. Pittenturff.  Com. ex rel. v. Asper.

*Parent and child—Custody of children—Interest of children—Cruelty of parent—Habeas corpus.*

1. In *habeas corpus* proceedings to determine the custody of children, the court will consider the interest of the children rather than the desire of the parents in disposing of the question.

2. Where a father has permitted the children to remain in the care and keeping of respectable families for seven years, under an agreement made by his wife, in which he had acquiesced, that no claim should be made for their return, he cannot recover possession of them in *habeas corpus* proceedings, where it appears that he was a man of intemperate habits; that he ill-treated his wife and children; that he did not contribute to their support; and that the children themselves desire to remain with the respondents rather than to return to their parents.

*Habeas corpus.* C. P. Adams Co., Aug. T., 1921, No. 189.

*Butt & Butt,* for petition; *J. Donald Swope,* for respondents.

McPHERSON, P. J., Dec. 4, 1922.—On petition of the above relators, writs of *habeas corpus* were issued on Aug. 4th, returnable on Aug. 8th, at which time hearings were had and testimony taken. The facts of the case are as follows: The relators are the father and mother of Ruth Lowry La Due and Lula

2 D. & C.

Com. ex rel. *v.* Pittenturff.   Com. ex rel. *v.* Asper.

Evelyn La Due, the former of whom, in 1921, was fourteen years of age, and in the custody of Paul F. Asper, and the latter twelve years of age, and in the custody of Christian S. Pittenturff. In 1914 these two children, with a brother, were sent into Adams County from New York City as members of a New York Tribune Fresh Air Fund Outing, and the two girls spent the summer with the respondents. In May of the next year (1915), the children returned to the defendants and spent the summer and autumn with them. In December of that year, their mother came to Adams County to see them, and at her request and solicitations, made because of the excellent surroundings in which the children were, the inability of their parents to properly care for them, the unsatisfactory conditions of their home life and the habits and conduct of their father, the respondents agreed to take and care for the children on condition that no claim for a return to their parents would ever be made. To this condition the mother assented personally at that time. The husband at that time was not personally a party to the placing of the children, as far as the record goes, but he apparently acquiesced therein by his conduct. He knew of their whereabouts, never protested against the same, and never contributed to their support beyond sending to them occasional presents. When the children arrived in Adams County in 1915 they were anæmic, under-nourished and not in good physical condition. The younger one was sickly, and it was only by intelligent and affectionate care and treatment by the family of Mr. Pittenturff that she was changed into a normal, healthy child. The children had a dread and fear of their father, based on his former ill-treatment of them, and, because of this, refused to make a visit to New York to see their parents a year or two after 1915.

The father was a man of intemperate habits, spent all of his earnings on himself and in the indulgence of his habits, except what he paid as rent for the rooms in which the family lived. The mother was also a wage-earner, being employed outside the home, and was away from it from morning until evening. There was no real affection between the father and mother, nor was there any real home life for the children. The father's habits made him quarrelsome, irritable and almost unbearable in his home life and treatment of his wife and children. From the letters in evidence, we conclude that the above conditions continued to 1921, probably in a milder degree toward the latter part of that period.

The homes of the defendants are in every way satisfactory homes for the children. In them they are well cared for, well instructed, surrounded by church and Christian influences, and by a family unity and affection. They are not only contented in their surroundings, but both the children expressed a desire to remain with the respondents in preference to returning to their parents.

On Feb. 22, 1921, Mrs. La Due made a demand upon the defendants for the return of the children. This was refused because of the original condition under which the children were taken. After discussion, Mrs. La Due acquiesced in this refusal and again promised not to ask again for them. On March 1, 1921, the father wrote a letter to Mr. Asper, demanding the return of Ruth, and on March 24, 1921, he wrote to Mr. Pittenturff, demanding the return of Lula. These demands were refused by the respondents, and the petitions for *habeas corpus* were subsequently presented.

While the children have never been adopted by the respondents, yet they are in the custody of the defendants with their parents' consent, and with the understanding that the children would remain with the defendants, and that the parents would not ask for their custody at any future time. This arrange-

ment did not destroy the legal rights of the parents to the custody of the children, yet, as they are subordinated to the interest of the children, the question for the consideration of the court in this proceeding is whether or not it will be for the welfare and advantage of the children to remain with the respondents or to be returned to the parents. It is the interest of the children, rather than the desire of the parents, that must govern the disposition of this matter: Com. *v.* Hart, 14 Phila. 352; Com. *v.* Ashton, 8 W. N. C. 563; Com. *v.* Schladensky, 9 W. N. C. 315; Com. *v.* Kenney, 1 Ches. Co. Reps. 322; Com. *v.* Wise, 3 Dist. R. 289; Com. *v.* Lerch, 2 D. & C. 288.

After a careful consideration of the testimony taken in this case, and of the facts which we feel it proves, we conclude that the physical, spiritual and moral well-being of the children would be better served by their remaining where they are than by being returned to the custody of their parents in New York. We base this conclusion upon a comparison of the two homes and the respective surroundings of the children therein, being confident that the training, care and influences in the homes of the respondents will result in the development on the part of the children of a higher and finer type of character than if returned to the parents. We have also considered, in reaching this conclusion, the expression of preference on the part of the children, which we believe is one of wisdom.

And now, Dec. 4, 1922, it is ordered that Lula Evelyn La Due be remanded into the custody of Christian S. Pittenturff, and that Ruth Lowry La Due be remanded into the custody of Paul F. Asper; that the parents of said children, viz., Robert Emmet La Due and Martha Mary La Due, be permitted to visit the said children at all reasonable times, and that the said children shall not be influenced against their said parents by the said Christian S. Pittenturff and Paul F. Asper, or their families.

The writs of said *habeas corpus* are hereby dismissed, at the costs of the relators.

From John P. Sipes, McConnellsburg, Pa.